IN THE DISTRICT COURT OF THE UNITED STATES FOR
THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Securities and Exchange Commission, Movant, v. Contender Development, Inc. Respondent. | ) | Case No. 6:26-cv-02575-SAC **OPINION AND ORDER** |

This matter is before the Court on a Motion to Strike, or in the Alternative, for Leave to File Sur-Reply filed by Respondent Contender Development, Inc. ("Contender"). ECF No. 18. The Movant, the Securities and Exchange Commission ("SEC"), filed a response in opposition and Contender filed a reply. ECF Nos. 19; 20. The motion is accordingly ripe for review.

## BACKGROUND

This case relates to a pending civil enforcement action in the Southern District of Florida, *Securities and Exchange Commission v. Feingold*, No. 1:25-cv-20436 (S.D. Fla.) ("Enforcement Action"). *See* ECF No. 1. In the Enforcement Action, the SEC alleges David Feingold ("Feingold") and other individuals and entities they control raised money from investors in a private equity fund using deceptive means and materially false statements. *See* ECF No. 1-9. On or about January 16, 2026, the SEC issued a subpoena for documents to Contender, a real estate development firm with its primary offices in Greenville, South Carolina. ECF Nos. 1; 1-1. According to the SEC, Feingold is an owner of Contender. ECF No. 1 at 7.

The SEC filed this action to compel Contender to produce documents in response to its subpoena. ECF No. 1. Contender filed a response in opposition and requested the Court quash the subpoena. ECF No. 15. The SEC filed a reply in support of its motion to compel (the "Reply").

ECF No. 16.

Contender now moves to strike portions of the Reply. ECF No. 18. In the alternative, Contender requests leave to file a sur-reply or for the Court to consider its motion to strike as a sur-reply. *Id.* For the reasons stated herein, the Court denies Contender's motion to strike and the relief requested regarding a sur-reply.

## STANDARD OF REVIEW

### I. Rule 12(f) Standard

The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter either on its own motion or on motion made by a party before responding to the pleading, or if a response is not allowed, within 21 days after being served with the pleading. Fed. R. Civ. P. 12(f). In considering a motion to strike, "the court must view the pleading under attack in the light most favorable to the pleader." *Crowder v. Blythe Constr. Inc.*, No. 7:22-cv-02605-DCC, 2023 WL 1860173, at *2 (D.S.C. Feb. 9, 2023) (citation modified). Motions to strike are generally disfavored "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5A A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1380, 647 (2d ed. 1990)) (citation modified). Though disfavored, courts have broad discretion in ruling on motions to strike. *Benedict v. Hankook Tire Co., Ltd.*, No. 3:17-cv-109, 2018 WL 936090, at *1 (E.D. Va. Feb. 16, 2018).

### II. Motion for Leave to File Sur-Reply

This District's Local Civil Rules do not expressly address sur-replies. *See* Local Civ. Rules. 7.01-7.02 (D.S.C.); *Clear Touch Interactive, Inc. v. Ockers Co.*, No. 6:21-cv-2208-TMC, 2022 WL 18587635, at *4 (D.S.C. Sep. 22, 2022). While the court has discretion to allow a party to file a

sur-reply, "courts in this circuit generally only allow sur-replies when fairness dictates that a party be provided the opportunity to address an issue that was raised for the first time in a responsive briefing." *Nutrien Ag Sols., Inc. v. Rogers*, No. 2:24-cv-03319-DCN, 2024 WL 4708018, at *3 (D.S.C. Nov. 7, 2024) (citation modified); *see also Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003) ("Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply"), *aff'd*, 85 F. App'x 960 (4th Cir. 2004); *Clear Touch*, 2022 WL 18587635, at *4 ("Sur-Replies may be permitted to afford a party the opportunity to address an issue that was raised for the first time in a responsive memorandum.").

## ANALYSIS

At bottom, Contender takes issue with the SEC's characterization of statements made by Feingold and his counsel in the Enforcement Action, as well as a report authored by the court-appointed Monitor in the Enforcement Action. ECF No. 18.

### I. Motion to Strike

Contender requests the Court strike the following paragraph on pages 2-3 of the Reply:

> The SEC's need for Contender's documents is highlighted by the apparent conflict between representations that Defendant Feingold and his counsel made to the Court in the underlying litigation and representations Contender made to the Court-appointed Monitor. Defendant Feingold submitted a declaration to the Southern District of Florida Court, which stated "The SEC correctly points out that Infrastructure did not generate income through year-end 2023. Of course it would not, if the projects take five years to develop, you do not generate the money until you either refinance or sell lots. You leave the lands to grow in value. However, in 2024, Infrastructure started to generate monies, **about $45 million."** *SEC v. Feingold*, Dkt. No. 54-1 ¶ 36 (emphasis in original); *see also* Motion at 5-6. Counsel for Feingold and Defendant BSI similarly stated to the Court during the Preliminary Injunction Hearing that "Broadstreet received $45 million" in 2024 from the Infrastructure projects. *See SEC v. Feingold*, Dkt. No. 84, at 64:24-65:5.[ ] Notwithstanding these statements made to the Southern District of Florida Court –

designed to leave the impression that the Infrastructure Series had generated $45 million in 2024 that was available to pay investors' preferred returns – months later, Contender told the court-appointed Monitor that the profits were far lower. In his July 30, 2025 Status Report, the Monitor stated:

> Due to the structure of paying down and satisfying the A&D loan first, despite ongoing lot sales to builders pursuant to the LPAs, Contender Development advised that, through December 31, 2024, only approximately $300,000 in *profits* ever had been realized on any of the infrastructure development projects and that only one project was realizing profits as of June 4, 2025.

*SEC v. Feingold*, Dkt. No. 135, at ¶ 39 (emphasis in original). Contender's representation that only approximately $300,000 in profits had been realized on the Infrastructure development projects through December 31, 2024, is dramatically less than the $45 million claimed by Defendant Feingold in February 2025 and the SEC is entitled to obtain Contender's relevant records sought by the Requests, which go to both claims and defenses in this matter.

ECF No. 16 at 2-3. In addition, Contender requests the Court strike footnote 1 on page 3 of the Reply:

> Specifically, counsel stated "In 2024, it was the first year that Broad Street received $45 million. This was the first year these infrastructure projects generated sufficient amounts of money to be paid over to Broad Street because the lenders have to be paid. You know, these are complicated structures. Lenders have to be paid off, and once they're paid off the real estate developers have to be paid." *Id*.

and the following bullet point on page 4 of the Reply:

> As discussed above, counsel for Defendants Feingold and BSI has made claims about the monies received from the Infrastructure projects that vastly differ from statements about profitability that Contender made to the Monitor. The Defendants' "accounting" is not relevant to the analysis.

*Id*. at 3-4.

Contender argues the SEC "seeks to cause this Court to believe both Feingold and his counsel lied to the court in the underlying Enforcement Action" and that such accusations are misleading, "incredibly serious," "improper," and an "attempt by the SEC to poison the well and

intimidate its opponents." ECF No. 18 at 1-4. Contender further argues the Reply is the equivalent of a pleading and may be stricken under Rule 12(f), and to the extent the Court disagrees, the Court should exercise its inherent authority to strike certain portions of Reply. *Id*. at 3 n.2. In response, the SEC argues Contender's motion is "baseless," and it does not accuse Feingold and his counsel of lying to the court in the Enforcement Action. *See* ECF No. 19.

"[M]otions to strike pursuant to Rule 12(f) are directed only to pleadings." *Gordon v. TBC Retail Grp. Inc.*, No. 2:14-cv-3365-DCN, 2020 WL 1703912, at *2 (D.S.C. Apr. 8, 2020). The Reply — or any of the briefing on the Motion to Compel — is not a "pleading" under Rule 12(f) and therefore Rule 12(f) does not apply. *See* Fed. R. Civ. P. 7(a) (listing types of pleadings); *Anderson v. Greenville Health Sys.*, No. 6:17-03239-AMQ-JDA, 2018 WL 8300521, at *4 (D.S.C. August 21, 2018) (finding that a motion is not a pleading under Rule 7 of the Federal Rules of Civil Procedure); *Jackson v. Genuine Data Servs. LLC*, No. 3:21cv211 (DJN), 2022 WL 256281, at *4 (E.D. Va. Jan. 26, 2022) ("[b]y omission from Rule 7(a), motions, briefs and affidavits necessarily do not constitute pleadings.").

While the Court has inherent power outside of Rule 12(f) to strike other documents in appropriate circumstances, the Court finds no reason here to exercise its inherent power to strike the proposed language from the Reply. *See Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 150 (4th Cir. 2009) (recognizing the court's inherent authority to strike other filings and affirming the district court's decision to strike a portion of a memorandum for failing to comply with the local federal rules); *Jones v. Cooper*, No. 6-21-cv-02213-DCC-JDA, 2021 WL 11457417, at *4 (D.S.C. October 21, 2021) (relying on the court's inherent authority to strike an improperly filed affidavit); *Thomas v. Meyer*, No. 1:21cv1428 (AJT/JFA), 2023 WL 2088416, at *6 (E.D. Va. Feb. 17, 2023) ("a district court has inherent power, in appropriate circumstances, to strike items

from the docket as a sanction for litigation conduct" (citation modified)); *Tepe v. Corker*, No. 3:23-cv-000423-RJC-DCK, 2024 WL 2885921, at *1 (W.D.N.C. May 3, 2024) (striking improper filing from the docket as sanction for litigation conduct).

Here, in the language at issue, the SEC merely quotes various filings in the Enforcement Action and statements made by counsel at a hearing in the Enforcement Action. ECF No. 16 at 2-3. Contender does not dispute the accuracy of the quoted material, only the SEC's characterization of the statements. *See generally* ECF Nos. 18; 20. The SEC discusses what it describes as an "apparent conflict" within these filings and statements, but "does not accuse Feinngold, his counsel, or Contender of lying to the Court." ECF Nos. 16 at 2; 19 at 2. Accordingly, the Court will not exercise its inherent authority to strike the proposed language from the Reply. *See Anusie-Howard v. Todd*, 920 F. Supp. 2d 623, 627-28 (D. Md. 2013), *aff'd*, 615 F. App'x 119 (4th Cir. 2015) ("Because of their very potency, inherent powers must be exercised with restraint and discretion.").

## II. Motion for Leave to File Sur-Reply

As alternative relief, Contender requests the Court grant it leave to file a sur-reply or consider its Motion to Strike as its sur-reply to address what Contender characterizes as a "misleading argument" in the Reply. ECF No. 18 at 5.

However, the SEC did not raise this matter for the first time in the Reply and thus Contender has already had an opportunity to respond. *Nutrien*, 2024 WL 4708018, at *3 (noting that in this district, courts generally allow sur-replies for a party to address an issue raised for the first time in a responsive pleading). In the Motion to Compel, the SEC discusses statements made by the defendants to the court in the Enforcement Action and the report of the court-appointed Monitor which is purported to contain representations made by Contender to the Monitor. *See*

ECF No. 1 at 5-6. Indeed, the SEC references pages 5 and 6 of the Motion to Compel in the language Contender seeks to strike from the Reply. *See* ECF No. 16 at 2.

Accordingly, the Court denies Contender's motion for leave to file sur-reply and the Court will not consider Contender's Motion to Strike as a sur-reply.

**CONCLUSION**

For the reasons discussed above, the Court **DENIES** Contender's Motion to Strike, or in the Alternative, for Leave to File Sur-Reply [ECF No. 18].

IT IS SO ORDERED.

United States District Judge

August 25, 2026
Greenville, South Carolina